FILED
CLERK, U.S. DISTRICT COURT
07/17/2020
CENTRAL DISTRICT OF CALIFORNIA
BY: ___jgu___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 8:20-cr-00087-JLS |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1341: Mail Fraud] |
| DAVID WAYNE SWEANEY, | |
| Defendant. | |

The United States Attorney charges:

[18 U.S.C. § 1341]

A.  INTRODUCTORY ALLEGATIONS

1.  At times relevant to this Information:

    a.  Nanotech Engineering, Inc. ("Nanotech") was a Delaware corporation that maintained its principal place of business in Irvine, California, within the Central District of California, as well as operating a second location in Loveland, Colorado. Nanotech purported to be in the business of developing revolutionary solar panels that used patent-pending nanotechnology to make its solar panels more efficient than other solar panels on the market. Neither Nanotech nor its securities were ever registered with the United States Securities and Exchange Commission ("SEC"). Unregistered

Nanotech shares were sold to victim-investors via a private placement memorandum ("PPM").  Nanotech had no discernable source of income or revenue – virtually all of its funds were victim-investor funds.

      b.   Co-Conspirator 1 ("CC-1"), a resident of Irvine, California, established Nanotech and was the Chief Financial Officer ("CFO"), owner, and principal of Nanotech.  CC-1 controlled and directed the employees and business activities of Nanotech.  In or around February 1998, CC-1 pleaded guilty to one count of felony securities fraud in Nevada state court.

      c.   Defendant DAVID WAYNE SWEANEY, a resident of Fort Collins, Colorado, was listed on documents as the Chief Executive Officer of Nanotech and supervised the Loveland, Colorado location.  Defendant SWEANEY was the nephew of CC-1.  Defendant SWEANEY built the Nanotech website and updated the content of the website.  In or around March 2018, at the direction of CC-1, defendant SWEANEY established the main Nanotech bank accounts.  Defendant SWEANEY was the signatory on the main Nanotech bank accounts and deposited victim-investor checks in those accounts.  Nanotech employees at its Irvine, California office sent defendant SWEANEY checks received from victim-investors, via FedEx, for defendant SWEANEY to deposit in the Nanotech bank accounts.

      d.   Co-Conspirator 2 ("CC-2"), a resident of Irvine, California, was the Chief Operations Officer of Nanotech.  CC-2 signed three materially false and misleading Forms D that Nanotech filed with the SEC.  CC-2 also established and was the signatory on several bank accounts for entities where Nanotech transferred victim-investor funds.

B.  THE FRAUDULENT SCHEME

2.  Beginning in or around September 2017, and continuing through at least in or around December 2019, in Orange County, within the Central District of California, and elsewhere, defendant SWEANEY, together with others, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud investors as to material matters, and to obtain money and property from investors by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts, relating to investments in Nanotech.

3.  The fraudulent scheme was carried out, in substance, as follows:

   a.  Nanotech would employ "cold-callers," unlicensed stockbrokers paid, at least at times, on a commission basis, in a "boiler-room" type environment, to solicit investments in the company from victim-investors located throughout the United States. The "cold-callers" operated out of the Nanotech office in Irvine, California. Potential victim-investors were contacted via telephone by the "cold-callers," who operated off of written scripts. When the "cold-callers" contacted potential victim-investors, the "cold-callers" would use high pressure sales tactics to try to get the victim-investors to view a web-share presentation and, ultimately, to invest. Through false and fraudulent statements and digital and written materials, the "cold-callers" solicited investments in Nanotech stock from victim-investors. These false and fraudulent statements included the following: (1) Nanotech "Nanopanels" had an efficiency rate of three times that of silicon solar panels currently on the market; (2) Nanotech "Nanopanels" were a third of the cost of

3

silicon solar panels currently on the market; (3) Nanotech "Nanopanels" were the size of a FedEx envelope but stronger, and more lightweight and flexible than silicon panels; (4) Nanotech would have 60-70% of the sales of the solar market in the first few years; and (5) Nanotech "Nanopanels" would take over the solar industry.

   b.   Potential victim-investors who decided to invest would be provided with a PPM and a subscription agreement, which outlined the terms of the investment. Nanotech's website, www.nanotechengineeringinc.com, had the PPM available for potential victim-investors to download as well. The PPM contained multiple material false representations and omissions of material fact, including: (1) falsely stating that the CFO's name was Michael Hatton to conceal CC-1's true identity and prior conviction for felony securities fraud; (2) falsely stating that investor money would be used only for overhead expenses and the manufacture of "Nanopanels," when defendant SWEANEY, and others, in fact used a significant portion of investor money for personal expenses; and (3) failing to disclose that investor money was being transferred to other entities owned or controlled by defendant SWEANEY, CC-1, and CC-2.

   c.   Potential investors would be provided with Nanotech's banking information so that they could wire funds to Nanotech, or were provided a pre-paid FedEx envelope to send checks to the Nanotech office in Irvine, California. Victim-investor checks received were then sent, via FedEx, by a Nanotech employee in Irvine, California to defendant SWEANEY in Loveland, Colorado. Defendant SWEANEY deposited victim-investor checks in the Nanotech bank accounts in Colorado.

d. Defendant SWEANEY, at the direction of CC-1, would create a video purportedly depicting a functioning Nanotech "Nanopanel" that the "cold-callers" showed to potential victim-investors, and that defendant SWEANEY posted online for potential victim-investors to view, to induce potential victim-investors to invest in Nanotech. The "cold-callers" told victim-investors that the video was "absolute proof" of how the "Nanopanel" outperformed even the most efficient silicon panel on the market. The video captured a side-by-side comparison which depicted a purported functioning "Nanopanel" versus a standard large silicon solar panel. In the video, an actor hired by defendant SWEANEY purportedly showed the "Nanopanel" outperforming the standard large silicon solar panel, even though the "Nanopanel" was approximately ten times smaller than the silicon panel. In reality, Nanotech never developed a functioning "Nanopanel." Defendant SWEANEY used a small standard silicon solar panel and powered it with a hidden battery pack to make the purported "Nanopanel" appear to outperform the large standard silicon solar panel.

e. Defendant SWEANEY, at the direction of CC-1, would purchase approximately $300,000 in used solar panel manufacturing equipment from a defunct solar panel company. Defendant SWEANEY assembled the equipment at the Nanotech facility in Loveland, Colorado. Defendant SWEANEY, on at least two occasions, at the direction of CC-1, arranged for potential victim-investors, who wanted to verify that Nanotech had a legitimate operation, to tour the Nanotech facility in Loveland, Colorado. CC-1 and others falsely represented to victim-investors that the equipment was valued at $100 million.

f.  Defendant SWEANEY, CC-1, and CC-2 would transfer a large portion of victim-investor funds to other entities they controlled, or would use the funds for personal expenses including: (1) a luxury yacht; (2) three sports cars; (3) cosmetic surgery; (4) dental care; (5) jewelry; (6) luxury fashion; and (7) Amazon purchases.

4.  By means of the fraudulent scheme described above, defendant SWEANEY, and others, caused over 100 victim-investors to pay Nanotech approximately $9,512,662.

5.  At the time the false and fraudulent pretenses, representations, promises, and omitted facts described above were made, defendant SWEANEY knew they were being made, and knew they were false.  The false and fraudulent pretenses, representations, promises, and omitted facts were material because they were capable of influencing the decisions of victim-investors, or potential victim-investors.

//
//
//

C. THE USE OF THE MAIL

6. To carry out an essential part of the fraudulent scheme, defendant SWEANEY, within the Central District of California, caused items to be delivered by a private or commercial interstate carrier, namely FedEx, and it was foreseeable to him that mails and commercial interstate carriers would be used. In particular, on or about June 28, 2019, for the purpose of executing the fraudulent scheme, defendant SWEANEY knowingly caused an item to be delivered by a private and commercial interstate carrier, namely, a check from victim-investor A.C. for $1,000,000 payable to Nanotech Engineering Inc., sent, via FedEx, by an employee in the Nanotech Irvine, California office to defendant SWEANEY in Loveland, Colorado.

NICOLA T. HANNA
United States Attorney

*Scott M. Garringer*
Deputy Chief, Criminal Division For:

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

DANIEL H. AHN
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office

RYAN G. ADAMS
Special Assistant United States Attorney
Santa Ana Branch Office